UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18 CR 81 SNLJ (ACL) |
| | ) |
| CHRISTOPHER DALE LEWIS, | ) |
| | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).  Pending before the undersigned are Defendant Christopher Dale Lewis' pretrial motions.  (Docs. 53, 55, 56, 58, and 65.)

Lewis first argues that the circumstances surrounding his April 8, 2015 interview caused him to make involuntary statements in violation of the Fifth Amendment.  (Doc. 54 at 2.)  To support this argument, Lewis "relies on a combination of express or implied promises of benefits or leniency combined with deceitful behavior that resulted in overbearing [his] will…"  (Doc. 68 at 3.)  Lewis further claims that the subsequent statements he made on February 27, 2017 were the product of his initial involuntary statement, and those derivative statements should be suppressed as fruit of the poisonous tree.  *Id*. at 2.

Next, Lewis asks the Court to strike the introductory paragraph in the Indictment as surplusage based on his view that it is "an unfairly prejudicial summary of the overall

claim made against the defendants rather than an allegation of specific facts underlying the alleged scheme or conspiracy." (Doc. 55.)

Lewis further requests that the Indictment be dismissed on three separate grounds. First he suggests that the Indictment be dismissed for pre-indictment delay. (Doc. 56.) The second request for dismissal is based on an argument that Congress intended Use of Fire to Commit a Federal Felony under 18 U.S.C. § 844(h) to be a sentence enhancement rather than a separate offense from the underlying felony, in this case mail fraud. (Doc. 58.) The third ground cited for dismissal is that the Indictment is unconstitutional as applied to this case because the use of fire resulted in the burning of a private residence which is beyond the power of Congress under the Commerce Clause. (Doc. 65.)

The Government filed a Brief in Opposition to Lewis' Motions. (Doc. 61.)

After an evidentiary hearing during which three law enforcement officers testified, both parties submitted memoranda. (Docs. 68, 69.)

In consideration of the pleadings identified above, as well the exhibits admitted into evidence, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that the Defendant's pretrial motions should be denied.

## I. Findings of Fact

Defendant Christopher Dale Lewis is charged with Conspiracy to Use Fire to Commit a Federal Crime, Mail Fraud, and Aiding and Abetting the Use of a Fire to Commit a Federal Crime on August 31, 2014. On that day, a fire destroyed the home owned by Bob and Yeawon Lowery. The Lowerys were out of town at the time of the

fire. Several months after the fire, investigators received information from the subject of another investigation that Lewis was the person who started the fire. Officers located Lewis when he was meeting with his State probation officer and asked him if he would be willing to talk. Lewis agreed and he was led to an interview room where he was left alone for at least four minutes.

Ripley County Sheriff Deputy Richie Phillips entered the room and advised Lewis "You're not under arrest, okay?" Lewis responded "Yeah." Deputy Phillips reviewed the *Miranda* rights with Lewis and Lewis initialed each right to affirm he understood the rights. *See* Gov't. Ex. #1. He also signed the "Waiver of Rights" statement that provided: "I have read the above statement of my rights and I understand each of those rights, and having these rights in mind, I waive them and I am willing to make a statement." *Id*.

Once the paperwork was signed, Deputy Phillips advised Lewis, "I want to talk to you about the fire at Bob Lowery's house." Lewis responded, "What about it?" Deputy Phillips answered "What can you tell me about it?" He also encouraged Lewis to be careful about what he said. Lewis denied knowing anything.

A second officer entered the room, Missouri State Highway Patrol Sgt. Jeffrey Johnson. He told Lewis that Lewis had a "great opportunity" to "help [him]self out." Sgt. Johnson also encouraged Lewis to cooperate and be on his "team." Sgt. Johnson warned Lewis that the officers had significant evidence of his involvement in the arson case. Both officers told Lewis that the case against him was already made. When asked if he'd be on Sgt. Johnson's team, Lewis responded, "I do want to be on your team."

Before Lewis could express reluctance to talk without assurances of leniency, Sgt. Johnson interjected and said that immunity was not something the officers were able to offer.  Instead, Sgt. Johnson told Lewis that since Lewis had committed a crime, something had to happen.  Sgt. Johnson inquired as to why Lewis was on probation.  Lewis advised it was for drugs and guns, specifying, methamphetamine and marijuana.  Sgt. Johnson told Lewis that the person they were interested in was Bob Lowery, the person who benefited from the crime the most.

    The interview room had a table in one corner and three chairs.  Lewis was seated in a chair that was initially in the corner.  He moved it to sit closer to the table when Deputy Phillips reviewed the *Miranda* waiver form and then moved it back in the corner at Sgt. Johnson's request after Johnson entered the room.  Lewis appeared to be comfortable speaking to the officers throughout the interview.  He often had his right foot crossed over his left knee and his elbows on the armchairs.  Lewis expressed himself with his hands and often leaned forward to emphasize a point.

    Additionally, Lewis advocated for himself and articulated his view that talking to the prosecutor might help.  Sgt. Johnson replied that the prosecutor wouldn't be able to promise anything until Lewis shared his information.  In response to Sgt. Johnson's encouragement to talk, Lewis stated, "I'm not going to put myself out there.  You have no control over what happens to me…I could spend the rest of my life in prison possibly, worst case scenario."  Sgt. Johnson advised Lewis "You're not going to prison for the rest of your life for an arson."  When Lewis pressed Sgt. Johnson for the worst case scenario, Johnson replied, "You're in a boat that's sinking.  All you can do at this point is

start bailing." Lewis answered, "I hear you, I hear you." Sgt. Johnson continued to encourage Lewis to cooperate.

Within ten minutes after Sgt. Johnson entered the room, Lewis expressed frustration about the fact no guarantees were being offered to him in exchange for his cooperation. He was also amused by Sgt. Johnson's offer to settle for an oral statement instead of having Lewis write his statement down since the interview was being recorded. Lewis replied, "Well, you're recording it, it's just like having a written statement."

Throughout the interview, Lewis asserted himself; he sat up straight and waved his hands at the officers. Lewis emphatically stated, "I understand, you cannot give me any guarantee that I won't go to prison over this." In response to this declaration, Sgt. Johnson promised that he would "speak to the prosecutor" and even though Johnson couldn't promise what would happen, the prosecutor "normally listens to what I have to say." Sgt. Johnson asked Lewis, "Show me you're not a throw away person and let me go to bat for you, alright?" Lewis agreed and confessed to his role in the fire. That confession came less than 16 minutes after he was given the *Miranda* warning.

Lewis' statement about the fire took about eight minutes. When Lewis indicated he thought Lowery would talk to him about the fire, the officers exited the room and left Lewis alone for approximately 13 minutes. Deputy Phillips then returned alone and talked to Lewis for another six minutes. During this interaction, Lewis was very talkative and expressive with his hand movements. Deputy Phillips left the room for another five minutes and then returned to conclude the meeting. The time stamps on the video-player reveal that 48 minutes and 46 seconds elapsed from the time Deputy Phillips first entered

the interview room until the time he and Lewis exited the room.  The interview lasted a total of less than 30 minutes.

## II.  Conclusions of Law

### II.A.1.  Voluntariness of Statement

Lewis alleges that the confession he gave on April 8, 2015 was involuntary.  To support this claim, Lewis argues that the interview occurred in a "law enforcement dominated setting" (Doc. 68 at 2); Sgt. Johnson overstated the strength of the evidence against Lewis, *id*. at 3; the officers suggested Lewis was not the primary target rather they were more interested in building a case against another person, *id*. at 4; the officers should have allowed Lewis the opportunity to speak to the prosecutor even if the prosecutor would have refused the request, *id*.; and Sgt. Johnson assured Lewis that he would exercise his influence over the prosecutor on Lewis' behalf even though immunity could not be offered to Lewis, *id*. at 5.   Lewis avers that in "just under 15 minutes," the combination of these factors overcame his "refusal to confess and his express desire to cooperate only with an assured leniency."  *Id*. at 6.  To summarize, Lewis argues that:

> The entire conversation considered in context, sequence, tone, and physical affect should lead to the conclusion that the Government cannot show [ ] that [ ] Lewis' confession was the product of a free and voluntary choice within the meaning of the Fifth Amendment and the Due Process Clause of the Constitution of the United States.

*Id*. at 7.

The Government responded that Lewis' statements on April 8, 2015 were made voluntarily in a non-custodial setting.  In support of its position the Government first

Page **6** of **19**

asserts that even though Lewis was not in custody, he was advised of the *Miranda* warning and signed the "Waiver of Rights" statement before talking to the officers.  The Government also notes that Lewis: 1) willingly met with officers, 2) was left unattended during substantial portions of the time he was in the interview room which supports the informal and non-coercive nature of the interview, 3) was relaxed during the interview, 4) understood the officers' questions, 5) intelligently, articulately, and willingly described his involvement in the arson, and 6) was an adult male offender in his mid-thirties, suggesting Lewis is familiar with the criminal process.  (Doc. 69 at 12-13.)  In consideration of the circumstances, the Government claims "that the authorities did not overbear Lewis' will and capacity for self-determination."  *Id*. at 13.

First, while Lewis does not directly argue that he was in custody at the time of his statements, the Court will briefly address this issue for the sake of clarity.  The Eighth Circuit has consistently held that "where there is no clear indication that the defendant's freedom to depart has been restricted, we have typically concluded that a police station interview was noncustodial."  *United States v. LeBrun*, 363 F.3d 715, 723 (8th Cir. 2004). The statements in question were made in an interview room within the Ripley County Sheriff's Department.  Deputy Phillips advised Lewis "You're not under arrest, okay?"  Lewis indicated he understood that fact.  Although Lewis was not in custody, he was given the *Miranda* warning and signed the Waiver of Rights section.[1]  At the conclusion

---

[1]  In his post-hearing brief, Lewis suggests that the *Miranda* rights and waiver form was not completed by him based on the fact he motioned toward the "Statement of Miranda Rights" form nearly 14 minutes into the interview and started to explain the only reason he hadn't "filled out that entire paper," before being interrupted by Sgt. Johnson.  (Doc.

Page **7** of **19**

of the interview, Lewis was not arrested. The record shows that the April 8, 2015 interview was conducted in a non-custodial setting.

The primary issue related to Lewis' statements is whether the circumstances of the interview caused Lewis to make an involuntary statement. The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278 (1936). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Perry*, 714 F.3d 570, 574 (8th Cir. 2013) (quoting *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004)).

To determine whether a statement is voluntary, courts look at "the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused." *United States v. Boslau,* 632 F.3d 422, 428 (8th Cir. 2011). Among the factors courts consider are "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *United States v. Wallace,* 713 F.3d 422, 426 (8th Cir. 2013) (quoting *Vega,* 676 F.3d at 718).

The appropriate test for determining the voluntariness of a confession is "whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." *United States v. McClinton*, 982 F.2d 278, 282 (8th Cir. 1992) (quoting *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989)). In analyzing the

---

68 at 2-3.). Regardless of Lewis' statement, a review of the video-recording shows that Lewis unmistakably acknowledged his rights, initialed each right, and signed the form.

Page **8** of **19**

"overborne will" test, the court looks at the conduct of the officers and the capacity of the suspect to resist the pressure to confess. *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157 (1986). A statement is not rendered involuntary by the incapacity of the defendant alone; there must be some coercive police activity. *Connelly,* 479 U.S. at 164. "Misrepresentations on the part of the government do not make a statement per se involuntary." *Flittie v. Solem*, 775 F.2d 933, 945 (8th Cir. 1985), citing *Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (confession voluntary even though police falsely told defendant that his companion had confessed). It is the government's burden to "prove by a preponderance of the evidence that the challenged statements were voluntary." *LeBrun,* 363 F.3d at 724).

The Eighth Circuit noted that it's "obvious[]" that "interrogation of a suspect will involve some pressure because its purpose is to elicit a confession." *Id.* "[T]he fact that the tactics produced the intended result ... does not make [a] confession involuntary." *Id.* at 968. In other words, "there is nothing inherently wrong with efforts to create a favorable climate for confession." *United States v. LeBrun,* 306 F.3d 545, 555 (8th Cir. 2002) (internal quotation omitted). "'[Q]uestioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne.'" *United States v. Astello,* 241 F.3d 965, 967 (8th Cir. 2001) (quoting *Jenner v. Smith,* 982 F.2d 329, 334 (8th Cir. 1993)). Nor will a promise of leniency, an "expressed disbelief in the statements of a suspect ..., or lie[s] to the accused about the evidence against him" necessarily render a confession involuntary.

Page **9** of **19**

*Wilson v. Lawrence County,* 260 F.3d 946, 953 (8th Cir. 2001) (internal citations omitted).  Rather, the coercive conduct must be "such that the defendant's will was overborne and his capacity for self-determination critically impaired." *Astello,* 241 F.3d at 967 (internal quotation omitted).

Lewis relies on *United States v. Lopez*, 437 F.3d 1059 (10th Cir. 2006), to support his position that promises of leniency overbore his will.  The facts of *Lopez* are distinguishable from the instant case as an officer promised Lopez a specific sentence if he confessed to killing by mistake.  Sgt. Johnson's promise to speak to the prosecutor on Lewis' behalf does not equate to the promise in *Lopez* which the Tenth Circuit found "may indeed critically impair a defendant's capacity for self-determination." *Id*. at 1065 (citation omitted).   That being said, an officer's promise to relay a suspect's cooperation to the prosecutor does not make his confession involuntary. *See United States v. Gaines*, 295 F.3d 293, 299 (2d Cir. 2002) (finding statement voluntary though agent promised to make defendant's cooperation known to prosecutor and judge). *See also Astello*, 241 F.3d at 967-68 (8th Cir. 2001) (holding that analogy about train leaving the station and those who told the truth would be on the train not coercive); *United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995) (finding defendant's mistaken belief that he had been promised leniency would not render confession involuntary); accord *United States v. Mashburn*, 406 F.3d 303, 309-10 (4th Cir. 2005) (holding confession voluntary though agents told defendant he faced a 10-year sentence and the only way to reduce the sentence was to cooperate); *United States v. Santos-Garcia*, 313 F.3d 1073, 1079 (8th

Cir. 2002) (noting that neither a promise of leniency, an expressed disbelief in defendant's statements, nor lies to the defendant about the evidence against him will necessarily render a confession involuntary).

The fact the interview was videotaped allowed the Court to conduct a thorough review of the circumstances surrounding Lewis' confession. There is convincing evidence that Lewis knew and understood his rights, and voluntarily answered questions after having been given the *Miranda* warning. The officers respectfully communicated with Lewis and asked him if he was willing to talk about the fire under investigation. Lewis willingly talked to the officers. He was in the interview room for roughly 53 minutes while the interview itself lasted only 30 minutes. The two officers who participated in the interview encouraged Lewis to relay what he knew about the fire so that they could build a case against the person who benefited the most, the home owner. Lewis was familiar with the criminal justice process as he was on probation for drugs and guns. He also appeared relaxed and comfortable throughout the interview. He was assertive and challenged the officers in the hope of securing consideration for his cooperation. Lewis was not worn down by improper interrogation tactics or lengthy questioning. Sgt. Johnson's promise to go to bat for Lewis, denial of the request to speak to the prosecutor, and the totality of circumstances surrounding the interview were "not so coercive as to deprive [Lewis] of [his] ability to make an unconstrained decision to confess." *Astello*, 241 F.3d at 967.

The Court finds that Lewis' April 8, 2015 statements were voluntary. The totality of the circumstances reveal that Lewis' will was not overborne nor was his capacity for

self-determination critically impaired. As a result, his request for the suppression of the April 8, 2015 statements should be denied.

### II.A.2.  Derivative statements

Lewis also requests suppression of his statement to officers on February 27, 2017, as "the derivative fruit of the earlier compelled statements." (Doc. 68 at 1.) "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011), quoting *Segura v. United States*, 468 U.S. 796, 804 (1984). In addition, "[v]erbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search." *United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002), citing *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). "[T]he defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007).

In this case, because Lewis statements to the officers on April 8, 2015 were made voluntarily as discussed above, his later statements in 2017 were not fruit of the poisonous tree. *See United States v. Goodale*, 738 F.3d 917, 922 (8th Cir. 2013).

Lewis's request for the suppression of derivative evidence secured as the result of his April 8, 2015 confession should be denied.

### II.B.   Motion to Strike Surplusage

In his second Motion, Lewis moves the Court to strike the first paragraph of the Indictment which provides:

> In 2014, defendants Christopher Dale Lewis and Yeawon Lowery were involved in an insurance fraud conspiracy in which they planned to burn, then burned a residence owned by defendant Yeawon Lowery and her husband, Robert Lowery, and planned to cause, and then caused, insurance claims to be submitted to Liberty Mutual Insurance for the fire loss to the residence and personal property claimed to have been in the residence and destroyed in the fire, which resulted in a total loss to Liberty Mutual Insurance Company.

(Doc. 2 at 1.) Lewis claims the paragraph "is simply an unfairly prejudicial summary of the overall claim made against the defendants rather than an allegation of specific facts underlying the alleged scheme or conspiracy." (Doc. 55 at 1.)

While Federal Rule of Criminal Procedure 7(d) permits the Court to strike surplusage from an indictment upon a defendant's motion, such motions "are not granted lightly, and carry a significant burden of persuasion." *United States v. Augustine Med. Inc.*, No. CRIM. 03-321 (1-8) ADM, 2004 WL 502183, at *4 (D.Minn. Mar. 11, 2004) (unpublished). The court's authority to strike surplusage is permissive rather than mandatory, and motions to strike surplus language from the indictment "should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." *United States v. Figueroa*, 900 F.2d 1211, 1218 (8th Cir. 1990) (citing *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962)). In cases of factual and legal complexity, background information is particularly helpful for providing context to the alleged criminal conduct." *Augustine Med. Inc.,* 2004 WL 502183, at *4.

The alleged criminal conduct is complex.  The challenged paragraph is relevant and provides helpful context.  Lewis' conclusory statement that the paragraph is unfairly prejudicial is insufficient to sustain his request to strike it.  As such, the Motion to Strike Surplusage should be denied.

**II.C.  Motion to Dismiss for Pre-Indictment Delay**

Next, Lewis argues that the Indictment should be dismissed "on the grounds that his rights under the Due Process Clause of the Fifth Amendment of the Constitution have been violated by the delay in the commencement of these proceedings." (Doc. 56.)  To support his request, Lewis alleges a delay of three and a half years for unknown reasons.  He also claims that the charges may result in him being responsible for an unfair portion of the more than $300,000 loss alleged in the Indictment.  Furthermore, he's uncertain whether sufficient evidence remains for an independent determination to be made related to whether the fire was intentionally set.  Lewis further suggests that "after hearing the evidence" the Court will conclude that Lewis' right to Due Process of the law has been violated by the pre-indictment delay. (Doc. 57 at 2.)  No such evidence was adduced at the hearing nor did Lewis attempt to further this argument in his post-hearing brief.

The Due Process Clause of the Fifth Amendment protects a criminal defendant against unreasonable pre-indictment delay.  *United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir. 1986).  When there is no evidence that the Government "acted intentionally to harass or gain a tactical advantage, no due process violation may be found." *United States v. Benshop*, 138 F.3d 1229, 1232-33 (8th Cir. 1998), citing *United States v. Stierwalt*, 16 F.3d 282, 285 (8th Cir. 1994).  "To prove actual prejudice, a

defendant must specifically identify witnesses or documents lost during delay properly attributable to the government." *Bartlett*, 794 F.2d at 1289.  "It is not sufficient for a defendant to make a speculative or conclusory claims of possible prejudice as a result of the passage of time." *United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000).

The record of the case demonstrates that the investigation was document intensive, there was a change of case agents, difficulty in acquiring records, and multiple reports requested from the fire investigator.  The Defendant did not establish that any testimony or information was lost as a result of the timing of the Indictment.  In the absence of specific claims of prejudice, the Motion to Dismiss for Pre-Indictment Delay should be denied.

**II.D.  Violation of § 844(h) is a Felony Offense not a Sentence Enhancement**

Lewis' fourth Motion avers that Count I alleging Conspiracy to Use Fire to Commit a Federal Crime and Count III which charges Aiding and Abetting the Use of Fire to Commit a Federal Crime "do not create separate offenses against the United States but that Congress intended to enhance the penalty for any offense which was committed by means of fire as set forth in 18 U.S.C. § 844(h)(1)."  (Doc. 58 at 1.)  While acknowledging that no decision "addresses or resolves the claim [he] makes" (Doc. 58 at 3), Lewis contends that the title and structure of § 844(h)(1) was intended to create a penalty enhancement rather than a separate crime. (Doc. 59 at 1.)  Lewis posits in enacting § 844, Congress' intent was to add an additional 10-year consecutive penalty when fire [i]s used in accomplishing any federal felony rather than intending to create a new separate offense.  Lewis clarifies that he is <u>not</u> claiming:

> that he is being twice punished or penalized beyond the statutory maximum but rather the form in which Congress authorized a greater punishment was not by conviction of a separate crime or imposition of a separate punishment but rather the 10-year mandatory consecutive punishment…

*Id.* at 4. Lewis suggests that § 844(h) doesn't describe a criminal offense rather it defines a sentencing enhancement much like 18 U.S.C. § 924(e) which "establishes a penalty for a person who has been convicted of 18 U.S.C. § 922(g) subject to a number of conditions…" (Doc. 59 at 2.).

The penalty provision for Conspiracy to Use Fire to Commit a Federal Crime allows for a term of imprisonment of not more than twenty years, while Aiding and Abetting the Use of Fire to Commit a Federal Crime requires a ten year mandatory minimum. The use of fire is a required element for both offenses.

When addressing double jeopardy and multiplicity claims in cases involving use of fire to commit mail fraud, the Eighth Circuit has relied upon the legislative history cited by both parties which provides that "whoever uses fire to commit any felony which may be prosecuted in a court of the United States **commits an additional offense** and shall be subject to a sentence in addition to the sentence for the predicate offense." H.R.Rep. No. 678, 97th Cong., 2d Sess. 3, reprinted in 1982 U.S. Code Cong. & Admin. News 2311, 2633 (emphasis added). The Eighth Circuit in *United States v. Shriver*, 838 F.2d 980, 982 (8th Cir. 1988) stated, "[a]s this passage makes plain, Congress intended that the crimes of using fire to commit a felony and the felony itself may be punished cumulatively…" This legislative history and quote from *Shriver* are in clear opposition to Lewis' argument that Congress intended § 844(h) to be a sentence enhancement rather

than a separate offense from the underlying felony.  Consequently, his Motion to Dismiss Counts I and III for Failure to State an Offense Against the United States should be denied.

### II.E.  Use of Fire to Commit a Felony statute, 18 U.S.C. § 844(h), does not violate the Commerce Clause even if property burned is a private residence

Lastly, Lewis moves the Court to dismiss Counts I and III for Use of Fire to Commit a Felony alleging those charges are unconstitutional as applied to this case.  Title 18 U.S.C. § 844(h)--prohibits the "use[ of] fire or an explosive *to commit any felony which may be prosecuted in a court of the United States*."  (Emphasis added.)  Lewis encourages the Court to apply the reasoning from *United States v. Jones*, 529 U.S. 848, 858 (2000) wherein the Supreme Court concluded that applying the federal arson statute, § 844(i), "to a private residence exceeded the authority vested in Congress under the Commerce Clause."  (Doc. 65 at 2.)  More particularly, Lewis asks the Court to find that:

> The use of the word "fire" in § 844(h)(1) as well as § 844(i) was intended by Congress to be the same act or type of act as arson and that while arguably, Congress could criminalize or enhance punishment of any felony for "using fire" the Supreme Court has limited the jurisdiction of Congress' power which is based on the Commerce Clause and does not extend to a private residence, the precise property at issue in this case.

*Id*.

Paragraph 10 of the first Count in the Indictment alleges that Lewis and Co-Defendant Yeawon Lowery:

> knowingly and willfully conspire[d]. . .to execute a scheme and artifice to defraud and obtain money from Liberty Mutual Insurance by using fire to burn a building and residence…insured by Liberty Mutual Insurance, and

>by making false. . .representations. . .in presenting claims. . .to Liberty
>Mutual Insurance Company for payment to be sent and delivered by
>mail…

(Doc. 2 at 3-4.)

As argued by the Government, a number of "[c]ourts have considered and rejected arguments that application of § 844(h)(1) contravenes the Commerce Clause." (Doc. 69 at 23.) The Fourth Circuit held that "§ 844(h)(1) does not facially exceed Congress's commerce power, because it is a generic penalty section that draws its constitutional authority from the requirement that the underlying felonies-here, mail and wire fraud-can be prosecuted 'in a court of the United States.'" *United States v. Walker*, 47 F.App'x. 639, 643 (4th Cir. 2001) (unpublished). *See also United States v. Creech*, 408 F.3d 264, 267 (5th Cir. 2005) ("§ 844(h)'s jurisdictional nexus is derived from the underlying felony, which must be one that 'may be prosecuted in a court of the United States.'"); *United States v. Pappadopoulos*, 64 F.3d 522, 528 (9th Cir. 1995) (same).

In consideration of the foregoing, Lewis' Motion to Dismiss based on a facial challenge to § 844(h) should be denied.

## V. Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Lewis' pretrial motions (Docs. 53, 55, 56, 58, and 65) be **denied**.

Further, the parties are advised that they have fourteen days in which to file written objections to this Report and Recommendation, unless an extension of time for

good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 18th day of March, 2019.

                                            /s/ Abbie Crites-Leoni
                                            ABBIE CRITES-LEONI
                                            UNITED STATES MAGISTRATE JUDGE